### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

YAAKOV CINNER, on behalf of himself and
all others similarly situated,

   *Plaintiff*,

  v.

XACTUS, LLC, f/k/a CREDIT PLUS, LLC,
individually and as successor in interest to
CREDIT PLUS, INC.

   *Defendant*.

Civil Matter No. 23-4531

**CLASS ACTION COMPLAINT**

**TRIAL BY JURY DEMANDED**

## I.  PRELIMINARY STATEMENT

1.  This is a consumer class action brought pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x, seeking relief for Defendant's widespread violations thereof.

## II.  JURISDICTION *and* VENUE

2.  Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

3.  Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b) because Defendant is headquartered in this district.

## III.  PARTIES

4.  Plaintiff Yaakov Cinner is an adult individual who resides in Lakewood, New Jersey.

5.  At all times pertinent hereto, Plaintiff was a "consumer." *See* 15 U.S.C. § 1681a(c).

6.  Defendant XACTUS, LLC is a foreign business entity. Its principal place of business is located at 370 Reed Road, #100, Broomall, Pennsylvania, 19008.

7. Defendant was formerly known as Credit Plus, LLC, which was formed as a result of the conversion of Credit Plus, Inc., a Maryland corporation, into a Delaware limited liability company on or about September 13, 2021.

8. At all times pertinent hereto, Defendant was a "person" and a "consumer reporting agency." *See* 15 U.S.C. §§ 1681a(b), (f).

## IV. FACTUAL ALLEGATIONS

*The Applicable Legal Background*

9. Concerned with abuses in the consumer reporting industry, Congress enacted the FCRA in 1970 "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010).

10. The FCRA principally regulates "consumer reporting agencies" ("CRAs"), companies that prepare "consumer reports" about individuals (or "consumers") for the CRAs' customers (or "users").

11. The FCRA defines a CRA as:

> [A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f).

12. Some CRAs, such as the well-known trio of Trans Union, Equifax, and Experian, maintain massive databases of consumer credit information from which they construct credit files about individual consumers. When a user requests a consumer report from one of these CRAs, the CRA prepares the report from information in its own files.

13.     Other "reseller" CRAs do not maintain their own databases of consumer credit information. Rather, when a user requests a consumer report about a given consumer from one of these CRAs, the CRA acquires information about that consumer, usually from other CRAs, for the purpose of preparing the requested consumer report for its user.

14.     Defendant is one such "reseller" CRA, which the FCRA defines as "a consumer reporting agency" that:

> (1) assembles and merges information contained in the database of another consumer reporting agency or multiple consumer reporting agencies concerning any consumer for purposes of furnishing such information to any third party, to the extent of such activities; and (2) does not maintain a database of the assembled or merged information from which new consumer reports are produced.

15 U.S.C. § 1681a(u).

15.     The FCRA imposes many duties on CRAs like Defendant. Relevant here is the requirement that, "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

16.     FCRA section 1681e(b) applies to all CRAs, irrespective of whether a CRA maintains a database of consumer information or resells information acquired from other CRAs.

17.     That is, reseller CRAs like Defendant have an independent duty to "follow reasonable procedures to assure maximum possible accuracy of the information" they assemble and merge about consumers like Plaintiff.

18.     Federal courts have, almost without exception, rejected reseller CRAs' common contention that they "need only accurately reproduce information furnished to it by other credit bureaus." *Ocasio v. Corelogic Credco, LLC*, No. 14-cv-1585-NLH-JS, 2015 WL 5722828, at *3-*4 (D.N.J. 2015) (collecting cases); *Dively v. TransUnion, LLC*, No. 11-3607, 2012 WL 246095, *3 (E.D. Pa. Jan. 26, 2012) ("DataQuick cites no case law which distinguishes the duties

of resellers under § 1681e(b) from the duties of any other type of CRA."); *Starkey v. Experian Info. Solutions, Inc.*, 32 F. Supp. 3d 1105, 1109 (C.D. Cal. 2014) (finding that while "resellers" are a subcategory of "credit reporting agencies" as defined by the FCRA, "nowhere does the FCRA set forth a different standard in § 1681e(b)" which requires consumer reporting agencies to employ reasonable procedures to provide accurate information); *Dirosa v. Equifax Info. Servs. LLC*, No. 13-131, 2014 WL 3809202, at *3 (C.D. Cal. Jan. 21, 2014) ("Plaintiff has raised a genuine dispute as to whether Defendant's reports were inaccurate because they included information that was incorrect on its face.").

19.     Notwithstanding the clarity of FCRA section 1681e(b)'s language and the nearly unequivocal judicial interpretations thereof holding all CRAs to the same "maximum possible accuracy" standard, reseller CRAs routinely assemble and merge irreconcilable information into the consumer reports they sell to their customers.

20.     In its review of reseller CRAs' practice of preparing "merged" consumer reports that contain information from multiple CRAs, the Consumer Financial Protection Bureau found violations of FCRA section 1681e(b) when "the reseller(s) used systems with known programming errors that introduced inaccuracies in consumer report data when the reseller(s) merged consumer report data they had purchased from multiple [CRAs]." CONSUMER FINANCIAL PROTECTION BUREAU, *Supervisory Highlights Consumer Reporting Special Edition*, 8, Issue 14 (March 2, 2017), *available at* http://files.consumerfinance.gov/f/documents/201703_cfpb_Supervisory-Highlights-Consumer-Reporting-Special-Edition.pdf.

*Plaintiff's Experience*

21.     In late 2021, Plaintiff sought to obtain a residential mortgage loan.

22.     Prior to applying for credit, Plaintiff paid, in full, the outstanding balance on a charged-off Capital One Bank USA account (the "Capital One account"), namely $2,147.

23.     According to credit reporting industry standards, accounts that a creditor has charged off must be reported with a $0.00 balance.

24.     On or about November 26, 2021, Defendant prepared a "merged infile credit report" about Plaintiff by obtaining information about him from three other CRAs, namely Experian, Trans Union, and Equifax, and assembling that information into a single, merged document (the "Report").

25.     Defendant prepared the Report for a fee and not gratuitously.

26.     Defendant prepared the Report for Plaintiff's prospective creditor, which Defendant had reason to believe intended to use the Report in connection with a credit transaction involving Plaintiff, namely a residential mortgage loan.

27.     Thus, the Report was a "consumer report." *See* 15 U.S.C. §§ 1681a(d), 1681b(a)(3)(A).

28.     Consistent with its standard practice, Defendant prepared the Report in an automated fashion.

29.     The Report included the following inaccurate information concerning the Capital One account (the "Information"):

| | | | COLLECTION ACCOUNTS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| E C O A | W H O S E | CREDITOR | DATE REPORTED | DATE OPENED | HIGH CREDIT OR LIMIT | BALANCE | PAST DUE | MO REV | 30 | 60 | 90+ | STATUS |
| | | | | DLA | ACCT TYPE | TERMS | | | | | | SOURCE |
| B | B | CAPITAL ONE BANK USA N 400344****** | 11/19 | 04/14 10/16 | $2300 REV | $2147 $64* | $2147 | 67 | 3 | 2 | 5 | R9 XP/TU/EF |

Late Dates: 4/17-150+, 3/17-120, 2/17-90, 1/17-60, 12/16-30, 5/16-120, 4/16-90, 3/16-60, 2/16-30, 3/15-30
ACCOUNT PREVIOUSLY IN DISPUTE-NOW RESOLVED-REPORTED BY SUBSCRIBER

30.     Initially, the Information was inaccurate because Defendant simultaneously reported that the Capital One account had a past due balance of $2,147 and an "R9" status, *i.e.*, that the account had been charged off by the creditor as uncollectable.

31.     Defendant should have known that its reporting of the Capital One account was incorrect because, as a common-sense matter, a charged-off account with a $0 balance cannot have a past due amount of $2,147.

32.     Industry standards also embrace this approach. The Consumer Data Industry Association's Credit Reporting Resource Guide instructs that charged-off accounts must not be reported with a balance owing or an amount past due.

33.     Next, the Information was inaccurate because, notwithstanding the Capital One account's having been charged-off and subsequently paid in full, Defendant reported a fictitious $64 per month payment obligation.

34.     Consistent with its standard practices and procedures, Defendant reported the $64 monthly payment requirement, a figure that it admittedly estimated based solely upon the (incorrectly) reported past due balance of $2,147.

35.     Indeed, elsewhere in the Report, Defendant stated as follows:

---
**DISCLAIMER**
---

An asterisk (*) following the payment amount indicates the repositories have no payment data and that the amount was automatically calculated as a percentage of the account balance.

36.     Defendant should have known that its reporting of the so-called "terms" of the Capital One account was incorrect because accounts that have been paid in full cannot have ongoing, future payment obligations, let alone obligations "automatically calculated" by a CRA.

37.     Finally, the Information was inaccurate because Defendant failed to reconcile the erroneous past due balance and alleged existing balance of $2,147 that it had obtained from Experian with conflicting information about the Capital One account that it had obtained from

Trans Union and Equifax, both of which correctly reported the Capital One account as charged-off with a past due amount and balance owing of $0.00.

38.     If Defendant had followed reasonable procedures to assure the maximum possible accuracy of the information it included in the Report about Plaintiff, it would have reconciled the conflicting records obtained from Experian, Trans Union, and Equifax concerning the Capital One account.

39.     The Information reflected negatively upon Plaintiff, his credit repayment history, his financial responsibility, and his creditworthiness.

40.     Defendant harmed Plaintiff's credit reputation by communicating to one or more third parties that he owned money that he did not, in fact, owe. This harmful, inaccurate reporting was also a substantial factor in his inability to secure a residential mortgage loan on the most favorable terms available and decreased Plaintiff's mortgage borrowing capacity.

41.     After November 26, 2021, Defendant assembled and merged additional reports about Plaintiff that contained the same Information about the Capital One account evident in the November 26, 2021 Report. Each time, Defendant continued to report the Capital One account as due and owing notwithstanding conflicts among the data it obtained from Experian, Trans Union, and Equifax.

42.     At all times pertinent hereto, Defendant was acting by and through its agents, servants and/or employees who were acting within the course and scope of its agency or employment, and under the direct supervision and control of the Defendant herein.

43.     At all times pertinent hereto, the conduct of the Defendant, as well as that of its agents, servants and/or employees, was intentional, willful, reckless, and in grossly negligent disregard for federal laws and the rights of the Plaintiff herein.

## V.      CLASS ACTION ALLEGATIONS

44.      Plaintiff brings this action on behalf of the following Class for Defendant's

violations of FCRA section 1681e(b):

### *Failure to Reconcile Balance Class*

For the period beginning five (5) years prior to the filing of this Complaint and continuing through the date of the Court's class certification order, all natural persons with an address in the United States and its Territories about whom Defendant assembled and merged account information from two or more consumer reporting agencies into a report that it sold to a third party, which account information has different balances.

### *Estimated Payment Terms Class*

For the period beginning five (5) years prior to the filing of this Complaint and continuing through the date of the Court's class certification order, all natural persons with an address in the United States and its Territories about whom Defendant prepared and sold a report to a third party that contained a payment amount that Defendant had automatically calculated.

### *Reported Charge Off Balance Class*

For the period beginning five (5) years prior to the filing of this Complaint and continuing through the date of the Court's class certification order, all natural persons with an address in the United States and its Territories about whom Defendant prepared and sold a consumer report to a third party that contained an account for which Defendant reported both a past due amount or balance owing and a charge-off status.

45.      Plaintiff reserves the right to amend the above definitions based upon developments

in discovery or otherwise.

46.      The members of the Classes are so numerous that joinder of all members is

impracticable. Although the precise number of Class members is known only to Defendant,

Plaintiff avers upon information and belief that the members of the Classes number in the

thousands. Defendant sells consumer reports to thousands of businesses throughout the country,

which reports are standardized, form documents, produced by the same practices and procedures

applicable to all subjects of the reports.

47.    There are questions of law and fact common to the Classes that predominate over any questions affecting only individual Class members. The principal questions concern whether Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of information it assembled from more than one source and merged in consumers' reports; and whether Defendant's conduct was willful.

48.    Plaintiff's claims are typical of the claims of the members of the Class, which all arise from the same operative facts and are based on the same legal theories.

49.    Plaintiff will fairly and adequately protect the interests of the members of the Classes. Plaintiff is committed to vigorously litigating this matter and has retained counsel experienced in handling consumer class actions. Neither Plaintiff nor his counsel has any interests which might cause them not to vigorously pursue this claim.

50.    This action should be maintained as a class action because the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the parties opposing the Class, as well as a risk of adjudications with respect to individual members which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

51.    Whether Defendant violated the FCRA can be determined by examination of Defendant's policies and conduct and a ministerial inspection of Defendant's business records and the information it obtained from multiple CRA sources.

52.    A class action is a superior method for the fair and efficient adjudication of this controversy. The interest of Class members in individually controlling the prosecution of separate

claims against Defendant is slight because the maximum statutory damages are limited to between $100.00 and $1,000.00 under the FCRA. Management of the Classes' claims is likely to present significantly fewer difficulties than those presented in many individual claims. The identities of the members of the Classes may be derived from Defendant's records.

## VI.   CLAIM *for* RELIEF

### COUNT I – VIOLATION *of* FCRA SECTION 1681e(b)

53.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

54.     Defendant willfully violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy of the information it obtained and published about Plaintiff and Class members by, without limitation, failing to reconcile inconsistent information obtained from more than one source; adding estimated repayment terms for charged-off accounts; and reporting past due balances for charged-off accounts.

55.     As a result of Defendant's conduct and omissions, it published inaccurate, harmful, and derogatory consumer reports about Plaintiff and members of the Classes to various third parties, including, without limitation, the prospective creditors of Plaintiff and members of the Classes.

56.     As a result of Defendant's violations of 15 U.S.C. § 1681e(b), it is liable to Plaintiff and members of the Classes for those remedies set forth in 15 U.S.C. §§ 1681n and 1681o.

## VII.   PRAYER *for* RELIEF

WHEREFORE, Plaintiff prays this Honorable Court grant him the following relief:

A.     certifying the proposed Classes under Federal Rule of Civil Procedure 23 and appointing Plaintiff and his counsel to represent the Classes;

10

B.      awarding actual damages pursuant to 15 U.S.C. § 1681o(a);

C.      awarding statutory damages in the amount of not less than $100 and not more than $1,000 per violation per Class member pursuant to 15 U.S.C. § 1681n(a);

D.      awarding punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

E.      awarding costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n and 1681o;

F.      and granting such other and further relief as may be just and proper.

## VIII.   JURY TRIAL DEMAND

57.     Plaintiff demands trial by jury on all issues so triable.

Dated:      November 16, 2023                Respectfully submitted,

YAAKOV CINNER, *on behalf of himself and all others similarly situated,*

By:    /s/John Soumilas
       James A. Francis
       John Soumilas
       Jordan M. Sartell*
       **FRANCIS MAILMAN SOUMILAS, P.C.**
       1600 Market Street, Suite 2510
       Philadelphia, PA 19103
       Tel: (215) 735-8600
       Fax: (215) 940-8000
       jfrancis@consumerlawfirm.com
       jsoumilas@consumerlawfirm.com
       jsartell@consumerlawfirm.com

       Daniel Zemel, Esq.
       **ZEMEL LAW, LLC**
       400 Sylvan Ave., Suite 200
       Englewood Cliffs, NJ 07632
       T: (862) 227-3106
       F: (973) 282-8603
       dz@zemellawllc.com

       *Attorneys for Plaintiff*

       **pro hac vice* application forthcoming

11